**2021 WI APP 25**

# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.: 2020AP791

Complete Title of Case:

CINCINNATI INSURANCE COMPANY,

    PLAINTIFF-RESPONDENT,

    V.

JAMES ROPICKY AND REBECCA LEICHTFUSS,

    DEFENDANTS-THIRD-PARTY
    PLAINTIFFS-APPELLANTS,

    V.

INFRATEK ENGINEERING INVESTIGATIONS, LLC AND DONALD L.
KRIZAN,

    THIRD-PARTY DEFENDANTS-RESPONDENTS.

---

Opinion Filed: March 24, 2021
Submitted on Briefs: January 14, 2021

---

JUDGES: Neubauer, C.J., Reilly, P.J., and Davis, J.
    Concurred:
    Dissented:

---

Appellant
ATTORNEYS: On behalf of the defendants-third-party plaintiffs-appellants, the cause
was submitted on the briefs of *Scott R. Halloin* of *Halloin Law Group,
S.C.*, Milwaukee.

Respondent
ATTORNEYS:      On behalf of the third-party defendants-respondents, Infratek Engineering Investigations, LLC and Donald L. Krizan, the cause was submitted on the brief of *Brian C. Tokarz* and *James M. Sosnoski* of *Meissner Tierney Fisher & Nichols S.C.*, Milwaukee.

On behalf of the plaintiff-respondent, Cincinnati Insurance Company, the cause was submitted on the brief of *Mark W. Rattan* and *Jonathan J. Feldbruegge* of *Litchfield Cavo LLP*, Milwaukee.

COURT OF APPEALS
DECISION
DATED AND FILED

March 24, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP791**

**STATE OF WISCONSIN**

Cir. Ct. No. 2019CV371

**IN COURT OF APPEALS**

CINCINNATI INSURANCE COMPANY,

  PLAINTIFF-RESPONDENT,

  V.

JAMES ROPICKY AND REBECCA LEICHTFUSS,

  DEFENDANTS-THIRD-PARTY
  PLAINTIFFS-APPELLANTS,

  V.

INFRATEK ENGINEERING INVESTIGATIONS, LLC AND DONALD L. KRIZAN,

  THIRD-PARTY DEFENDANTS-RESPONDENTS.

APPEAL from an order of the circuit court for Waukesha County: RALPH M. RAMIREZ, Judge. *Reversed and cause remanded for further proceedings*.

Before Neubauer, C.J., Reilly, P.J., and Davis, J.

¶1 NEUBAUER, C.J. Homeowners James Ropicky and Rebecca Leichtfuss (the homeowners) appeal from an order of the circuit court granting the motion for summary judgment by Infratek Engineering Investigations, LLC and Donald L. Krizan (collectively, Infratek). The circuit court determined that Infratek, as an agent of the homeowners' insurer, Cincinnati Insurance Company (Cincinnati), is exempt from liability arising from its alleged negligent investigation pursuant to WIS. STAT. § 895.475 (2017-18).[1] We disagree, and as such, reverse the grant of summary judgment and remand for further proceedings.

## BACKGROUND

¶2 This case arises out of a dispute between the homeowners and Cincinnati over potential insurance coverage for property damage to their residence. After the homeowners made a claim for coverage under their Cincinnati-issued homeowners' insurance policy, Cincinnati hired Infratek to conduct a post-loss claim investigation of the property damage to the home and its cause(s) so that Cincinnati could make coverage decisions. Infratek performed an investigation and issued a report to Cincinnati.

¶3 After Cincinnati denied a large portion of the homeowners' claim, it filed a complaint seeking a declaration that it had no further coverage obligation.

_____

[1] All references to the Wisconsin Statutes are to the 2017-18 version.

The homeowners then brought third-party claims against Infratek. The dispute at issue in this appeal involves the third-party claims against Infratek, not the insurance coverage dispute between Cincinnati and the homeowners.

¶4    The homeowners allege that Infratek's negligence, negligent performance of an undertaking, and negligent supply of information caused them damages. They allege that Infratek failed to discover the full extent of the damage caused by water infiltration and provided erroneous advice and guidance to them, their contractor, and Cincinnati concerning the extent of the water damage, causing them damages. They seek compensatory and consequential damages and costs for partial loss of use and repairs.

¶5    Infratek filed a motion for summary judgment, arguing that, as an agent of Cincinnati, it is statutorily exempt from liability under WIS. STAT. § 895.475. As pertinent to the issues on appeal, the homeowners moved to compel discovery relating to the relationship between Infratek and Cincinnati, as well as the nature of Infratek's past investigations for Cincinnati, and Cincinnati moved for a protective order. The circuit court granted limited discovery on the relationship between Cincinnati and Infratek and denied further discovery of past work performed by Infratek for Cincinnati.[2]

¶6    The circuit court then granted Infratek's motion for summary judgment and dismissed the action against Infratek with prejudice, leaving only Cincinnati and the homeowners as parties to the litigation. The homeowners appeal the court's order dismissing their claims against Infratek, as well as the court's order

---

[2] Although Cincinnati is not a party to this appeal, we granted its motion to intervene in this appeal on the limited issue of the propriety of the circuit court's discovery order.

denying the homeowners' motion to compel discovery related to Infratek's relationship with Cincinnati. We discuss additional facts below.

## DISCUSSION

*The Circuit Court Erred in Concluding That Infratek is Statutorily Exempt from Liability*

¶7 Before us is whether the circuit court properly granted summary judgment to Infratek based on its conclusion that WIS. STAT. § 895.475 applies to exempt Infratek from liability for the claim investigation of the homeowners' property damage—the investigation upon which the homeowners base their negligence claims. "We review a decision on summary judgment using the same methodology as the circuit court." *Rural Mut. Ins. Co. v. Lester Bldgs., LLC*, 2019 WI 70, ¶9, 387 Wis. 2d 414, 929 N.W.2d 180, *reconsideration denied*, 2019 WI 98, 389 Wis. 2d 34, 935 N.W.2d 681. Summary judgment is appropriate when the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (quoting WIS. STAT. § 802.08(2)). The parties do not dispute the material issues of fact before us, leaving only a question of law for us to decide—namely, whether § 895.475 applies here to shield Infratek from liability. The interpretation of this statute is a question of law that this court reviews de novo. *See Lester*, 387 Wis. 2d 414, ¶9.

¶8 WISCONSIN STAT. § 895.475 provides:

> EXEMPTION FROM CIVIL LIABILITY FOR FURNISHING SAFETY INSPECTION OR ADVISORY SERVICES. The furnishing of, or failure to furnish, safety inspection or advisory services intended to reduce the likelihood of injury, death or loss shall not subject a state officer, employee or agent, or an insurer, the insurer's agent or employee undertaking to perform such services as an incident to insurance, to liability for damages from injury, death or loss

occurring as a result of any act or omission in the course of the safety inspection or advisory services. This section shall not apply if the active negligence of the state officer, employee or agent, or of the insurer, the insurer's agent or employee created the condition that was the proximate cause of injury, death or loss. This section shall not apply to an insurer, the insurer's agent or employee performing the safety inspection or advisory services when required to do so under the provisions of a written service contract.

¶9 The circuit court determined that Infratek, acting as Cincinnati's agent, was exempt from liability because it provided "advisory services to reduce the likelihood of loss" *to the insurance company* in the claim evaluation process. The homeowners take issue with this interpretation, arguing that the statute does not exempt Infratek from liability arising from its negligent acts or omissions in the *post-loss* claim investigation it performed pursuant to the homeowners' property insurance. Infratek contends the statute bars claims against it, acting as Cincinnati's agent, for an alleged negligent investigation intended to reduce the insurer's loss, as the circuit court held. Alternatively, Infratek argues that the statute provides immunity for an alleged negligent investigation intended to reduce the homeowners' loss.

¶10 We reject Infratek's arguments. We conclude that WIS. STAT. § 895.475 does not provide immunity from liability for this post-loss claim investigation performed by or on behalf of an insurance company pursuant to the insurance contract. Given that our interpretation that the statute does not apply is dispositive, we need not address whether Infratek was acting as an agent of Cincinnati for purposes of the immunity statute. *See Lake Delavan Prop. Co. v. City of Delavan*, 2014 WI App 35, ¶14, 353 Wis. 2d 173, 844 N.W.2d 632 (court

5

need not address other issues when one is dispositive).[3] Thus, for purposes of this analysis, we will assume that Infratek was acting as an agent of Cincinnati within the context of the immunity statute.

¶11 When interpreting WIS. STAT. § 895.475, the goal is to give effect to the intent of the legislature, which we assume is expressed in the text of the statute. *See **State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. To this end, we give the language of the statute its common, ordinary, and accepted meaning. *Id.*, ¶45. We interpret statutory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes," and we interpret it reasonably to avoid absurd or unreasonable results. *Id.*, ¶46. We also consider the scope, context, and purpose of the statute insofar as they are ascertainable from the text and structure of the statute itself. *Id.*, ¶48. If, employing these principles, the meaning of the statute is plain, then we apply that language to the facts at hand. *See id.*, ¶¶45-50.

*The Statute Does Not Provide Immunity for the Insurer's Agent's Post-Loss Claim Investigation to Limit the Insurer's Obligations Pursuant to its Policy*

¶12 First, the language of WIS. STAT. § 895.475 does not apply to provide immunity for an insurer's own claim investigation seeking to limit the insurer's payment under its policy. The statute is unambiguously forward-looking—as pertinent here, the "advisory services" must be "intended to reduce the likelihood of … loss"—and only exempts an insurer or its agent from "liability for damages from … loss occurring as a result of any act or omission in the course of the ...

---

[3] For the same reason, we need not address the discovery dispute which largely relates to whether Infratek was an agent of Cincinnati. In addition, the prior work Infratek did for Cincinnati is not relevant to the intended purpose of this investigation, discussed below.

advisory services." *See* WIS. STAT. § 895.475. The loss sought to be reduced by the "advisory services" is necessarily in the future—and results from the "advisory services." It is undisputed that Infratek's engineer was asked to investigate the cause of the homeowners' reported property damage *that had already occurred*— a post-loss evaluation of an insurance claim.

¶13     More to the point, the statutory exemption clearly does not apply by its terms to an insurer's attempt to reduce its contractual obligation under its policy to insure a policyholder's claim for property damage. That Cincinnati may have to pay pursuant to its contractual obligations under its policy is not a "loss," much less a liability resulting from an act or omission of Infratek in the course of its post-loss claim investigation. Again, the only loss at issue in a typical claim investigation is the insured's property damage, not a potentially unfavorable contractual determination under the terms of the policy after receipt of the insurer's own claim investigator's evaluation of the facts.

*There is No Evidence That Infratek Provided Pre-Loss Advisory Services Intended to Reduce Loss to the Homeowners*

¶14     Infratek alternatively argues that any alleged damages the homeowners now contend result from its claim investigation are also exempt under the statute. We disagree, again, because the facts provided in the summary judgment evidence do not establish that Infratek's claim investigation was "intended to reduce the likelihood of … loss." *See* WIS. STAT. § 895.475. Indeed, Infratek admits the sole purpose of its investigation was to determine the cause of the property damage, not to reduce the likelihood of future loss to the homeowners. For example, Infratek's owner testified that the "scope of work" that he was asked to do was "to determine the cause of visible damage" to the residence. When asked whether Cincinnati asked him to investigate anything else, he confirmed "that was

it." Infratek's report states that it conducted an investigation "regarding storm water damage" and the conclusions address the causes of water infiltration.

¶15 The homeowners state that they thought that Infratek was brought in to provide an "honest and independent analysis of the damage" that their home suffered for the purposes of "provid[ing] guidance to [their] contractor ... to assist [them] in making repairs that were already in progress" and "to provide information to Cincinnati to help it adjust [their] claim."[4] In short, there are no facts to show the investigation was intended to reduce the likelihood of loss to the homeowner, but rather, it was undertaken pursuant to the insurance policy to determine the scope and cause of the property damage, and as asserted by the homeowners, to also address the repair of the property damage. In other words, while the homeowners now allege further damages arising from the investigator's advice or lack thereof relating to the extent of damage and repair, there is no showing that the claim investigation was undertaken on behalf of Cincinnati to prevent future loss. This insurer determined to conduct an investigation into the cause and scope of the damage so as to abide by its contractual obligations under the property policy— there is simply no indication that Cincinnati sought to have Infratek provide advisory services intended to prevent future loss. *See* WIS. STAT. § 895.475.

*The Language of the Statute and Case Law Support the Conclusion That WIS. STAT. § 895.475 Does Not Apply to Post-Loss Claims Investigations*

---

[4] The homeowners submitted an affidavit of Leichtfuss attesting that, when Cincinnati's representative came to the home to view the damage, the homeowners had already retained a contractor who was "starting repairs." The representative expressed concern about hidden damage and "said we needed an engineer's assessment to determine the scope of any hidden damage." Leichtfuss averred that she understood that an engineer was required to provide an assessment of the hidden damage and "to help our contractor better estimate the scope of work that was required for the repair, and to cut open the proper areas."

¶16    As the homeowners correctly point out, each case interpreting WIS. STAT. § 895.475 concerns an insurer providing pre-loss prevention services. *See Samuels Recycling Co. v. CNA Ins. Cos.*, 223 Wis. 2d 233, 588 N.W.2d 385 (Ct. App. 1998) (allegations by company that insurer failed to provide or negligently provided loss-control services related to pollution); *A.O. Smith Corp. v. Viking Corp.*, 79 F.R.D. 91 (E.D. Wis. 1978) (company claimed that insurer negligently inspected automatic sprinkler system before fire that caused loss to company).[5] Infratek has failed to provide a single case, from Wisconsin or elsewhere, wherein a statute like Wisconsin's was applied to provide immunity for an insurer or its agent in the context of a post-loss claim evaluation or investigation under a property insurance policy.[6]

---

[5] The exemption applies to voluntary inspections, providing specifically that it "shall not apply to an insurer, the insurer's agent or employee performing the safety inspection or advisory services when required to do so under the provisions of a written service contract." *See Samuels Recycling Co. v. CNA Ins. Cos.*, 223 Wis. 2d 233, 251-52, 588 N.W.2d 385 (Ct. App. 1998) (insurers who performed gratuitous pre-loss investigations were exempt from liability); *A.O. Smith Corp. v. Viking Corp.*, 79 F.R.D. 91, 93-94 (E.D. Wis. 1978) (same). Moreover, immunity does not apply if the insurer's actively negligent advice created the condition that caused the loss—if the safety recommendations increased the risk. *See id.* at 93; *Hamel v. Factory Mut. Eng'g Ass'n*, 564 N.E.2d 395, 396-97 (Mass. 1990) (legislature intended to exempt insurers from liability for safety inspections and for making recommendations to promote safety unless the insurer by its actions increases the safety risk at the facility inspected). It is also inapplicable if the entity providing advisory services acted independently of the insurer. *A.O. Smith*, 79 F.R.D. at 94.

[6] The homeowners also cite to persuasive cases from outside of Wisconsin that apply a similar statute only to pre-loss investigations. *See Hamel*, 564 N.E.2d at 396-97 (insurer exempt from liability for alleged negligent pre-loss inspections in months preceding an accident); *Swift v. Am. Mut. Ins. Co. of Boston*, 504 N.E.2d 621, 622-23 (Mass. 1987) (insurer exempt from liability for alleged negligent inspections that exposed injured employee to silica dust and citing to cases from other jurisdictions with similar pre-loss investigation exemption statutes).

As discussed in an article published four years after the enactment of WIS. STAT. § 895.475, numerous states sought to apply the workers' compensation bar to insurers that provided safety-related services at the workplace after negligence claims for voluntary undertaking were permitted. *See American Mut. Liab. Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 48 Wis. 2d 305, 179 N.W.2d 864 (1970) (and cases cited therein) (claim permitted prior to enactment of predecessor to WIS.

¶17 The statutory language and case law make clear that this exemption from civil liability applies when an insurer voluntarily inspects an insured's property to ensure that it is safe and up-to-code, not when it arrives on the scene after the fact to adjust the insured's post-loss insurance claim based on its contractual obligations to do so. The very use of the terms "safety inspection" and "advisory services," as well as the exclusion for contractually obligated "services," clearly indicates that this statute is forward-looking, involving voluntary loss prevention services.[7]

## CONCLUSION

¶18 For the foregoing reasons, we conclude that the circuit court erred in granting Infratek's motion for summary judgment on the ground that it is exempt from liability under WIS. STAT. § 895.475. We hold that this statute does not apply to exempt the insurer's agent from liability for post-loss claim investigation conducted pursuant to a claim made under a property insurance policy.

---

STAT. § 895.475 based on alleged negligent voluntary undertaking in pre-loss investigation of boiler). Wisconsin enacted this provision to exempt voluntary safety-related inspections conducted by workers' compensation insurers while permitting liability for contractually required services and active negligence creating the condition causing the injury. *See* Arthur Larson, *Work[er]'s Compensation Insurer as Suable Third-Party*, 1969 DUKE L. J. 1117, 1124 n.32, 1143 (1969) (the exemption from civil liability is intended to apply to workers' compensation and other safety related pre-loss safety inspections). As the author noted, one public policy ground for the scope of the exemption was to encourage workers' compensation carriers to voluntarily engage in accident prevention work, without incurring unlimited liability for failing to discover a hazard that allegedly should have been discovered. *Id.* at 1140; *Swift*, 504 N.E.2d at 623 (workers' compensation insurer is not to be penalized for collecting data by conducting voluntary safety inspections of employer's premises, since such inspections ultimately benefit the public, workers, their families, employer, and insurer).

[7] While neither party addresses the issue, that this attempt to fit a claims investigation under a property insurance policy into the terms of this statute is not supported by the language and overall purpose of the exemption is underscored by the fact that the homeowners' insurer owes duties to its insured arising out of the contractual relationship. Were the investigation undertaken pursuant to a "written services contract," immunity would not apply. It seems clear that the legislature did not contemplate application of the statute to an insurer's claims investigation obligations under a property policy.

*By the Court.*—Order reversed and cause remanded for further proceedings.