LAKE DELAVAN PROPERTY COMPANY, LLC,
Plaintiff-Respondent,

v.

CITY OF DELAVAN, Defendant-Appellant.†

Court of Appeals

*No. 2013AP1202. Submitted on briefs November 12, 2013.
—Decided February 12, 2014.*

**2014 WI App 35**

(Also reported in 844 N.W.2d 632.)

† Petition for Review denied June 12, 2014.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Steven A. Koch* and *Kathilynne A. Grotelueschen* of *Seymour, Kremer, Koch, Lochowicz & Duquette LLP*, Elkhorn.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Dean B. Richards* of *Reinhart Boerner Van Deuren S.C.*, Waukesha and *John L. Maier, Jr.* of *Sweet & Maier, S.C.*, Elkhorn.

Before Brown, C.J., Neubauer, P.J., and Gundrum, J.

¶ 1 NEUBAUER, P.J. The City of Delavan appeals from a judgment reversing its denial of a preliminary subdivision plat under a City ordinance addressing extraterritorial land division. We agree with the circuit court that the City's denial of the proposed plat was on the basis of the proposed use of the land and was therefore prohibited by Wis. Stat. § 236.45(3)(b) (2011–12).[1] The City's ordinance purports to be a permissible land division restriction on extraterritorial plats, but in effect it is extraterritorial zoning, which the City may not accomplish independent of the Town of Delavan. We affirm.

## FACTS

¶ 2. Lake Delavan Property Company, LLC (the Company) purchased land in the Town of Delavan, Walworth County, in 2004 and 2006 with the intention of subdividing the land and building around 600 single

---

[1] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

family homes. While the land is in the Town, it is within the City's extraterritorial plat approval jurisdiction, which extends to land within one and one-half miles of the City's limits. WIS. STAT. §§ 236.02(5), 62.05(1)(d). It is undisputed that at the time of purchase, the land was zoned residential by Walworth County. It is also undisputed that the land was within the planned sanitary sewer service area delineated by the Southeast Wisconsin Regional Planning Commission and was designated as "traditional neighborhood" in the City's 1999 Comprehensive Master Plan.[2] Long-range plans of the Town and County designated the area as "urban density residential (less than 5.0 acres per dwelling)."

¶ 3. On February 8, 2011, the City amended its subdivision ordinance to restrict land division within its extraterritorial jurisdiction to a density of no more than one lot per thirty-five acres of land and a minimum lot size of one acre. On May 24, 2012, the Company submitted a preliminary subdivision plat for development of the land for the City's approval. The City denied approval on July 10, 2012. The Company sought certiorari review and a reversal of the City's decision; the circuit court granted judgment in favor of the Company, reversing the City's decision to deny approval of the plat.

## DISCUSSION

*Appellate Procedure and Standard of Review*

¶ 4. A person aggrieved by the denial or failure to approve a plat may appeal by certiorari to the circuit

---

[2] In 2009, the City's common council adopted a new Comprehensive Plan and then amended that plan to designate the Company's land as "agriculture."

court. Wis. Stat. § 236.13(5). If the circuit court finds that the action of the governing body in denying a plat was arbitrary, unreasonable, or discriminatory, the circuit court shall direct that the plat be approved. *Id.* On statutory certiorari review, there is a presumption that the government body's actions were correct and valid. *Snyder v. Waukesha Cnty. Zoning Bd. of Adjustment*, 74 Wis. 2d 468, 476, 247 N.W.2d 98 (1976). "A reviewing court may not substitute its discretion for that of . . . the entity to which the legislature has committed these decisions." *State ex rel. Ziervogel v. Washington Cnty. Bd. of Adjustment*, 2004 WI 23, ¶ 13, 269 Wis. 2d 549, 676 N.W.2d 401. Unless the reviewing court takes additional evidence, statutory certiorari review is limited to whether (1) the governing body acted within its jurisdiction; (2) the governing body proceeded according to law; (3) the governing body acted in an arbitrary, oppressive, or unreasonable manner that represented its will and not its judgment; and (4) the order or determination was reasonable as based on the evidence. *Id.*, ¶ 14.

¶ 5. On appeal from the circuit court, we review the municipal body's decision, not the circuit court's. *Hegwood v. Town of Eagle Zoning Bd. of Appeals*, 2013 WI App 118, ¶ 5, 351 Wis. 2d 196, 839 N.W.2d 111. The scope of our review is the same as that of the circuit court, provided the circuit court has taken no additional evidence. *State v. Outagamie Cnty. Bd. of Adjustment*, 2001 WI 78, ¶ 26, 244 Wis. 2d 613, 628 N.W.2d 376. Ultimately, however, whether a governing body has exceeded its authority in rejecting a plat is a question of law we review de novo. *Wood v. City of Madison*, 2003 WI 24, ¶ 12, 260 Wis. 2d 71, 659 N.W.2d 31.

## Subdivision Regulation, Zoning, and Extraterritorial Jurisdiction

¶ 6. As background, we first engage in a brief discussion of subdivision regulation, zoning, and extraterritorial jurisdiction. The regulation of land division is not zoning:

> Subdivision regulations should be distinguished from zoning ordinances. The purpose of zoning is to provide an overall comprehensive plan for land use, while subdivision regulations govern the planning of new streets, standards for plotting new neighborhoods, and the protection of the community from financial loss due to poor development. Thus, while zoning can prohibit certain uses of property for subdivision purposes, [subdivision] regulations are designed to govern the manner in which unrestricted property is developed.

> Zoning covers the immediate use of land, while planning restricts transferability and future use, and the power to regulate the subdivision of land is, like zoning, another tool for planning.

E. C. YOKLEY, LAW OF SUBDIVISIONS § 39, at 157–58 (2d ed. 1981) (footnote omitted).

¶ 7. A municipality may exercise some control over the regulation of land outside its own geographical border. First, WIS. STAT. § 236.10(1)(b) authorizes a municipality to exercise extraterritorial plat approval authority as set forth in WIS. STAT. § 236.45, which addresses local subdivision regulation. For small cities, like the City of Delavan, this authority extends to land within one and one-half miles adjacent to their boundaries. WIS. STAT. §§ 236.02(5), 62.05(1)(d). Second, WIS. STAT. § 62.23(7a) establishes a procedure for a city and neighboring towns to work cooperatively to accomplish extraterritorial zoning within the city's extraterritorial

178

zoning jurisdiction, which, for small cities, extends for one and one-half miles adjacent to the city's boundaries. Sec. 62.23(7a)(a). The extraterritorial zoning must be done by a joint committee comprised of members from both the city and each of the affected neighboring towns. Sec. 62.23 (7a)(c). Finally, extraterritorial zoning requires publication of and a public hearing on the proposed ordinance. Sec. 62.23(7a)(a), (d).

*Extraterritorial Land Use Regulation*

¶ 8. In *Gordie Boucher Lincoln-Mercury Madison, Inc. v. City of Madison Plan Commission*, 178 Wis. 2d 74, 503 N.W.2d 265 (Ct. App. 1993), *overruled by Wood*, 260 Wis. 2d 71, the court determined that extraterritorial regulation of land use was solely the province of zoning and could not be accomplished under a municipality's extraterritorial plat approval authority. After reviewing the difference between plat approval and zoning, and noting the drafting history of the predecessor to the then-current WIS. STAT. ch. 236, the court concluded that the regulation of extraterritorial land use was beyond the scope of unilateral local government. *Boucher*, 178 Wis. 2d at 100–02. Chapter 236 confers "broad regulatory authority" on cities, but "that authority relates to the quality of the subdivision or land division and not to the use to which the lots in the subdivision or land division may be put." *Boucher*, 178 Wis. 2d at 101. Such extraterritorial control over use must be accomplished by an appropriately enacted comprehensive zoning ordinance. *Id.* at 101–02. The court of appeals affirmed the circuit court's order directing the City of Madison to approve Boucher's plat, which included a car dealership. *Id.* at 82, 102.

¶ 9. Ten years later, the Wisconsin Supreme Court reversed *Boucher*'s holding, concluding that WIS.

179

STAT. ch. 236 "does authorize a municipality to reject a preliminary plat under its extraterritorial jurisdictional authority based upon a subdivision ordinance that considers the plat's proposed use." *Wood*, 260 Wis. 2d 71, ¶ 37.

¶ 10. Soon after the *Wood* decision, the legislature enacted WIS. STAT. § 236.45(3)(b), *see* 2009 Wis. Act 399, which definitively determined that a municipality cannot deny extraterritorial plat approval based on land use.

> [A] municipality may not deny approval of a plat or certified survey map . . . on the basis of the proposed use of land within the extraterritorial plat approval jurisdiction of the municipality, unless the denial is based on a plan or regulations, or amendments thereto, adopted by the governing body of the municipality under [WIS. STAT. §] 62.23(7a)(c) [extraterritorial zoning].

WIS. STAT. § 236.45(3)(b). Thus, the current law is that a city may not use its extraterritorial plat approval authority to impose land use regulation that should have been done in cooperation with neighboring towns through extraterritorial zoning.

### The City's Denial of the Company's Plat

¶ 11. We now turn to the dispositive question: Was the City's denial of the Company's plat prohibited by WIS. STAT. § 236.45(3)(b)? The statute tells us that a city may not (1) deny approval of a plat (2) on the basis of the proposed land use (3) within the extraterritorial plat approval jurisdiction (4) unless the denial is based on zoning regulations passed cooperatively with neighboring towns. The only part of this prohibition that is contested is whether this denial was on the basis

of the proposed land use. The City maintains that the denial was no more than an application of its density restrictions, which are permissible under *Town of Sun Prairie v. Storms*, 110 Wis. 2d 58, 60–61, 327 N.W.2d 642 (1983) (minimum lot size restrictions permissible in subdivision regulations). The Company contends that the City wanted to keep the ring of land adjacent to its borders agricultural in nature and that the thirty-five acre density restriction is designed to do just that.

■

¶ 12. The City's thirty-five-acre density restriction is an improper use of its extraterritorial plat approval authority to rezone land over which it has no independent zoning authority. While the City has the authority to review extraterritorial subdivision plats, it cannot use this authority to impose land use restrictions. The City can only impose extraterritorial land use restrictions under its extraterritorial zoning authority, which must be exercised in conjunction with neighboring towns. *See* Wis. Stat. § 62.23(7a). Here, the City improperly used its extraterritorial plat approval authority to supersede the residential zoning that was in place. Wisconsin Stat. ch. 236 "does not permit approving authorities to supersede zoning regulations and restrictions." *Boucher*, 178 Wis. 2d at 96. Common knowledge and experience tell us that the ordinance's blanket density requirements effectively preclude residential development throughout the extraterritorial jurisdiction. Indeed, the ordinance's preamble states the ordinance was enacted "in order to protect rural character and farming viability." Although purporting to be a density standard that is part of subdivision regulation for quality under Wis. Stat. § 236.45(1), the result bespeaks the intent; the ordinance is a use prohibition, the very essence of zoning. *See* 83 Am. Jur.

2D, *Zoning and Planning* § 2 (2013) (overall purpose of zoning is to benefit community by sensible planning of land uses).

¶ 13. The City's reliance on *Storms*, 110 Wis. 2d at 58, is misplaced. First, *Storms* was decided over twenty-five years before the enactment of WIS. STAT. § 236.45(3)(b). Second, *Storms* held that a town may regulate minimum lot size within the town itself, *see Storms*, 110 Wis. 2d at 59, 71, and did not address extraterritorial plat approval jurisdiction, as is the case here and as governed by § 236.45(3)(b). Nothing in *Storms* permits the City to enact density restrictions that are so extreme as to effectively veto the zoned residential use of land.

¶ 14. The Company also argues that the City erred in refusing to consider its request for a waiver from the density and minimum lot size requirements. Because our decision on the enactment of the density requirements is dispositive, we need not address this waiver argument. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (we need not address other issues when one is dispositive of the appeal).

## CONCLUSION

¶ 15. We agree with the circuit court that the City's ordinance was a regulation of land use, not a mere density requirement in a subdivision regulation. The City acted outside its jurisdiction by using the extraterritorial plat approval power to deny a proposed plat based on land use. We affirm the circuit court's judgment in favor of the Company, ordering approval of the proposed plat.

*By the Court.*—Judgment affirmed.